IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
GAINESVILLE DIVISION

UNITED STATES OF AMERICA,

vs.                                        Case Nos.:    1:12cr42/AW/GRJ
                                                        1:17cv57/AW/GRJ

ROBERT BRANDON BILUS

_____

## <u>REPORT AND RECOMMENDATION</u>

This matter is before the court upon Petitioner Robert Brandon Bilus'
"Motion under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence
by a person in Federal Custody," filed through counsel.   (ECF Nos. 177,
178.)   The Government has filed a response (ECF No. 184) and Bilus has
filed a reply.   (ECF No. 185.) The undersigned conducted an evidentiary
hearing on January 9, 2020, following which Petitioner filed a notice of
dismissal of Ground Four of his motion.   (ECF No. 194.)   After a review of
the record and the evidence and arguments presented at the hearing, the
court concludes that the Bilus' motion should be denied.   *See* Rule 8(b)
Governing Section 2255 Cases.

## I.   BACKGROUND

On September 26, 2012, a grand jury charged Petitioner Robert
Brandon Bilus in a two count indictment with knowingly receiving and

attempting to receive child pornography in violation of 18 U.S.C.

§§ 2252A(a)(2)(A) and 2252A(b)(1) ("Count One") and knowingly

possessing and knowingly accessing with intent to view child pornography

in violation of §§ 2252A(a)(5)(B) and 2252A(b)(2) ("Count Two").   (ECF

No. 1.)[1]

The Fourth Final Presentence Investigation Report ("PSR") reflects

that Bilus was arrested on August 16, 2010 by an officer with the High

Springs Police Department ("HSPD").   (ECF No. 117, PSR ¶ 117.)   A

police officer responding to a complaint about a suspicious vehicle driving

around the neighborhood conducted a traffic stop due to the driver's failure

to use a turn signal.   Bilus was driving the vehicle, and the lone passenger

was a 12-year old female clad only in a shirt that covered her personal

area.   The two acted suspiciously and gave different stories about where

they were going.   Based on Bilus' statement that the two had just met

online before he picked the female up from her residence in High Springs,

---

[1] Petitioner was charged in Alachua County Circuit Court Case 01 2010 CF 003931 A with 37 counts of possession of obscene materials in violation of § 827.071(5), Florida Statutes.   The clerk's website notes the case was "transferred for federal prosecution" on October 8, 2012.

Case Nos.: 1:12cr42/AW/GRJ; 1:17cv57/AW/GRJ

the HSPD contacted the Internet Crimes Against Children (ICAC) Task

Force.

Law enforcement obtained and executed a search warrant on Bilus'

residence.    From the hard disk drive of Bilus' laptop computer they

recovered 37 files depicting child pornography, including 7 movies.    They

also found ten explicit photos of Bilus, taken using a mirror, that were

added to the system between September 7, 2009 and August 13, 2010.

At least four of the toddler images were added to the computer during this

time frame.    Investigators also recovered evidence that Bilus had used the

Skype[2] service to engage in sexually explicit conversations with minors,

attempting to solicit them for sexual purposes.    Excerpts from some of the

conversations, as well as descriptions of the explicit images and videos are

included in the PSR.    (ECF No. 117, PSR ¶¶ 13-17.)

Bilus was represented by retained attorney John Stokes during all

phases of the case except the instant post-conviction proceedings.

Beginning in October of 2012, the defense filed three motions to continue

the trial (ECF Nos. 14, 19, 23) before filing a motion to suppress in

---

[2] Skype is a service that allows people to use the internet to make and receive voice
and video calls online.

February of 2013, contending that there was no valid basis for the initial

traffic stop of his vehicle.   (ECF No. 28.)   The Government responded,

arguing that the stop was valid based on the officer's observation that the

vehicle made a turn without signaling.   (ECF No. 31.)   Bilus filed a

second motion seeking to suppress all evidence obtained during the

execution of the search warrant at his home, claiming a lack of probable

cause in the affidavit supporting the warrant application.   He maintained,

among other things, that the affidavit contained material omissions and

misstatements, without which the lack of probable cause would have been

apparent to the issuing magistrate, and that a warrant seeking to search for

child pornography was irrelevant to the only charge against him at that

point—the misdemeanor offense of contributing to the delinquency of a

minor.   (ECF No. 30.)   The Government responded in opposition.   (ECF

No. 32.)

Senior Judge Maurice M. Paul held a hearing on the motions and

denied them in a comprehensive order.   (ECF Nos. 35, 150.)   The court

found that the failure to signal supported the legality of the traffic stop and

that, even if it did not, the totality of the circumstances known to the officer

at the time provided legal justification for the stop.   It further found that the search warrant was properly applied for and issued because the facts as set forth in the search warrant application more than sufficed to provide probable cause that the crime of Traveling to Meet a Minor had occurred. The court stated that even if the warrant application were insufficient, there was "nothing about the minor misstatements or omissions that demonstrates anything but good faith on the part of the officers and the state attorney."   (ECF No. 35 at 17.)

Trial commenced on May 6, 2013.   After the Government presented its case, the defense called three witnesses who testified briefly about Bilus' reputation in the community. (ECF No. 154 at 111-120.)   Bilus did not testify.   The jury returned a verdict of guilty on both counts.   (ECF No. 57.)   Bilus timely moved for a new trial, a judgment of acquittal and release from custody pending sentencing.   (ECF Nos. 61-63.)   The court held a hearing on the motions on June 14, 2013, and denied the motions from the bench.   (ECF Nos. 66, 161.)

The PSR[3]  reflects Bilus' total offense level was 33.    (ECF No. 117.)

Starting from a base offense level of 22, Bilus received a two level

adjustment because the material he possessed involved a prepubescent

minor, another two level adjustment because the offense involved the use

of a computer, a four level adjustment because of the quantity of images,

and a five level adjustment because he engaged in a "pattern of activity"

involving the sexual abuse or exploitation of a minor.    (ECF No. 117, PSR

¶¶ 26, 28-31.)    He also received a two-level reduction because his

conduct was limited to receipt or solicitation of material involving the sexual

exploitation of a minor and he did not intend to traffic in or distribute the

pornographic material.    (PSR ¶ 27.)    Bilus, who was 24 years old when

he was arrested, had no prior criminal history except for the state

conviction and thus a criminal history category of I.    (PSR ¶¶ 42-43.)    The

applicable guidelines imprisonment range was 135 to 168 months as to

Count One, and the range on Count Two became 120 months due to the

statutory maximum sentence.    (ECF No. 117, PSR ¶ 74, 75.)

---

[3] The original draft PSR was filed on June 27, 2013.   (ECF No. 69.)   There was also a final PSR (ECF No. 76), a second revised final PSR (ECF No. 85), a third revised final PSR (ECF No. 100) and the fourth revised final PSR, quoted herein (ECF No. 117).

Case Nos.: 1:12cr42/AW/GRJ; 1:17cv57/AW/GRJ

On May 9, 2014,[4] the court sentenced Bilus at the top of the applicable guideline range to a term of 168 months of imprisonment on Count One and a concurrent, statutory maximum term of 120 months of imprisonment on Count Two, followed by concurrent life terms of supervised release.   (ECF Nos. 142, 143, 157.)

Bilus appealed, challenging the trial court's denial of the motions for judgment of acquittal and for a new trial.    The Eleventh Circuit affirmed in part and reversed in part in a lengthy unpublished order.    (ECF No. 165.) The Eleventh Circuit found the conviction on Count One was supported by the evidence, and it agreed with the Government's concession that Bilus' conviction on Count Two should be vacated because, under the facts of this case, possession of child pornography was a lesser-included offense of the crime of receiving child pornography charged in Count One.    The Eleventh Circuit found no merit in Bilus' myriad other claims.    It affirmed the district court's denial of the motions to suppress.    It found no error in

---

[4] Sentencing was delayed multiple times for reasons including time needed to review post-trial discovery and obtain transcripts, scheduling conflicts of witnesses, and disagreement about the use expert witnesses at sentencing.   The proceeding took place over two days.   The court heard testimony at a hearing on March 5, 2014, from defense witnesses Dr. Arlan Rosenbloom and Dr. Eric Imhof and the Government's witness Detective John Madsen, following which it stayed the proceedings to review the images involved in this case.   (ECF No. 134.)

the admission of testimonial references to the state charges against Bilus, because the events underlying both sets of charges were "inextricably intertwined."   It rejected Bilus' argument that the district court's admission of images and video clips of alleged child pornography without first viewing them was an abuse of discretion, and it found that the images and videos were probative and necessary for the prosecution to prove its case.   Bilus unsuccessfully challenged the district court's denial of a defense motion to strike testimony elicited on cross examination that Bilus' computer contained evidence indicating he had engaged in online chats about viewing child pornography.   Finally, the court rejected Bilus' challenge to the procedural and substantive reasonableness of his sentence, including his challenge to the application of several specific sentencing guidelines. (ECF No. 165.)

        In accordance with the Eleventh Circuit's mandate, on January 28, 2016, the district court entered an amended judgment vacating Bilus' conviction on Count Two and reimposing the same 168-month sentence on Count One.   (ECF Nos. 168-170).   On February 29, defense counsel filed a motion requesting a plenary de novo resentencing hearing for the court to

address the issue of concurrency of Bilus' state and federal sentences.

(ECF No. 171.)   The court denied the motion on March 21, 2016, in a

written order, and Bilus did not appeal.

Bilus filed the instant 2255 motion, through counsel, on March 8,

2017.   He raised four grounds for relief, one of which he has since

abandoned.   The Government opposes the motion in its entirety.[5]

## II. STATE COURT PROCEEDINGS[6]

Bilus was charged in Alachua County Circuit Court case 01-2010-CF-

3588-A with interference with custody; lewd or lascivious battery on a

person under 16 years of age; and traveling to meet a minor for sex.   John

---

[5] In its response, the Government sets forth the provision of § 2255(f) governing timeliness, although it does not challenge the timeliness of the petition.   Petitioner asserts that his motion is timely filed because it was filed "within the 90 day window (sic) following the affirmation of the Petitioner's conviction," (ECF No. 177 at 13), by which he of course means within one year from that date.   The Eleventh Circuit issued its order on September 15, 2015.   Bilus moved three times for an extension of time to file a request for a rehearing, ultimately filing his request on October 29, 2015.   The Eleventh Circuit denied the petition for rehearing on December 11, 2015.   The petition for rehearing tolls the time for filing a petition for certiorari because until this ruling there was no judgment to be reviewed.   *See Missouri v. Jenkins,* 495 U.S. 33, 46 (1990). Using that date to mark the finality of Bilus' conviction, the March 8, 2017, petition was timely filed.   It was also filed within one year from the date the district court denied the motion for reconsideration upon resentencing. (*See* ECF No. 173.)

[6] The Eleventh Circuit found that the state court proceedings were "inextricably intertwined" with this case.   Therefore, the court will briefly set forth the procedural history of that case herein.

Stokes, Esq., who represented Bilus in the instant federal case, also served

as counsel in the state case.   Trial began on November 5, 2013, and a jury

convicted Bilus as charged two days later.   Sentencing was continued

several times upon counsel's request due to the instant federal

proceedings.   Then-Circuit Judge Mary Day Coker sentenced Bilus on

June 4, 2014, to concurrent terms of five, fourteen and fourteen years,

respectively.   The court's form order included boxes to check to indicate

whether the sentence should be served consecutive to or concurrent with

other sentences.   None of the boxes are checked, and there is no mention

of Bilus's federal sentence, although the court was clearly aware of it.

Bilus's conviction and sentence were affirmed, per curiam, on appeal.

Attorney Michael Ufferman filed a motion pursuant to Rule 3.850,

Florida Rules of Criminal Procedure on April 6, 2018.   The court granted

several motions to amend, and the latest filed amended motion for post-

conviction relief was filed on October 26, 2018, and remains pending as of

1/22/2020.[7]

---

[7] The following grounds for relief, at least two of which are substantially similar to Bilus'
claims in the case at bar, are raised in the amended 3.850 motion:

    1. Defense counsel rendered ineffective assistance of counsel by failing to properly
       advise the Defendant regarding the State's pretrial plea offer and/or the ability to

## III.    EVIDENTIARY HEARING

Petitioner Bilus and his former defense counsel John Stokes, Esq.

were the only two witnesses to testify at the evidentiary hearing before the

---

     enter a guilty plea and preserve the right to appeal the denial of the motion to suppress;

2. Defense counsel rendered ineffective assistance of counsel by failing to present evidence at trial;

3. Defense counsel rendered ineffective assistance of counsel by failing to present evidence regarding the reason the alleged victim changed her version of events;

4. Defense counsel rendered ineffective assistance of counsel by failing to inform the Defendant of an offer from a federal prosecutor not to indict the Defendant in federal court if the Defendant would accept the State's offer;

5. Defense counsel rendered ineffective assistance of counsel by not calling the Defendant to testify at trial and instead discouraging him by telling him that his testimony was not needed and further misadvising him that if he testified, the State would be able to introduce chat dialogues into evidence and use them to impeach him and taint his credibility;

6. Defense counsel rendered ineffective assistance of counsel by failing to introduce into evidence the alleged victim's online profile;

7. Defense counsel rendered ineffective assistance of counsel by failing to argue to the jury that no DNA evidence or any other physical evidence existed to support the State's case;

8. Defense counsel rendered ineffective assistance of counsel by failing to timely object when the State injected an uncharged alleged robbery plot into the trial. Alternatively, defense counsel rendered ineffective assistance of counsel by subsequently introducing additional evidence relating to this uncharged alleged robbery plot;

9. At the time of Defendant's trial and sentencing hearing, the trial judge suffered from a medical condition which seriously affected her ability to perform her judicial duties, encroaching on Defendant's right to a fair trial and subsequent sentencing hearing;

10. Cumulative error.

Case Nos.: 1:12cr42/AW/GRJ; 1:17cv57/AW/GRJ

undersigned.   The following overview of the testimony will provide background for the discussion of Bilus' claims, below.[8]

Bilus said that his state case was pending approximately two years before his federal indictment.   He recalled some discussion with the attorney who represented him before Stokes that he "most likely" would be federally indicted, and when it did not happen for some time, he began to assume the charges would be resolved in state court.   Bilus learned of the federal indictment from Stokes, after a state court hearing on his motion to suppress.   Stokes counseled him not to worry because they would raise the same Fourth Amendment suppression issue in federal court.

Even after this court denied Bilus' motions to suppress, Stokes advised Bilus that the suppression issues should be preserved because they were very strong and likely to succeed on appeal.   Bilus testified that he thought if he entered a guilty plea he would not be able to raise them on appeal.   He also testified that he believed he was subject to the same sentence of incarceration regardless of whether he went to trial or pleaded guilty, so there was little to lose by proceeding to trial.

---

[8] Neither party requested a transcript of the proceedings and thus an official transcript is not part of the record.

Case Nos.: 1:12cr42/AW/GRJ; 1:17cv57/AW/GRJ

Bilus said when he expressed interest in a guilty plea, Stokes told him if he entered a plea the Government would argue for 14 years and Stokes would argue for ten years, with the understanding that the Court would impose a sentence somewhere in the middle.   He did not explain how Stokes had calculated the projected range.   Bilus did not recall discussing the possibility that the court could impose a life term of supervised release, claiming that he first he learned of this was when he was sentenced.

Bilus testified that he did not understand what a "conditional plea" was, or used that term in his conversations with Stokes, but he reiterated his understanding that he would not be able to appeal the denial of the motion to suppress unless he went to trial.   He explained that he was never adamant about going to trial, but rather he felt like he was "forced to go to trial" to preserve the suppression issues, and that Stokes said his sentence would be the same, or close to the same, either way so he did not have much to lose.   He denied having learned about a potential reduction in his sentence for acceptance of responsibility.

Bilus' state trial did not take place until November of 2013, about six months after his federal trial.   But even before his federal trial Stokes and

Bilus discussed how he might expect to serve the sentences in each case. Bilus recalled counsel saying that, in all likelihood, the court would recommend that the sentences run concurrently.   Bilus emphasized, however, that counsel did not guarantee concurrency of the sentences. He also said he understood that if he entered a guilty plea, the Government would recommend that the sentence run concurrently with the sentence in his state case.

Bilus believed the defense strategy at trial would be to argue that the Government could not prove the files were viewed.   He did not challenge his counsel's theory of defense because Bilus said he was not protesting his innocence, but merely remaining silent.

Bilus was asked whether he would have gone to trial: (1) if he had known that he could have pursued a conditional guilty plea and preserved his right to appeal the Fourth Amendment issues; (2) if he had known he could enter a guilty plea to the court and try to get those issues preserved; (3) if he had known it was not likely his state and federal sentences would run concurrently; and (4) if he had known he faced a lifetime of supervised

release.   Bilus responded in the negative to each question but said that all

of the factors played a part in his decision.

After his appeal was denied, Stokes and Stokes' wife (and then-legal

assistant, Christina Stokes) came to see him.   During that visit, Bilus

recalled Stokes making a comment about a phone call Stokes received

from AUSA Williams before the federal indictment.   According to Bilus,

Williams allegedly inquired whether Bilus was going to accept the state's

plea offer, and told Stokes that if Bilus entered a plea in state court, there

would be no federal charges.   Bilus testified that he became upset after

hearing this information for the first time.   Christina Stokes said she would

look into it, but Bilus never spoke with Stokes again.

On cross-examination Bilus explained that his dissatisfaction with

Stokes only came about after the proceedings ended and he learned about

things he believed Stokes should have told him, such as enhancements,

acceptance of responsibility, and the possibility of a life term of supervised

release.   Bilus did not have any recollection of Stokes consulting with other

attorneys about the case.   Bilus also did not specifically recall being

informed at his first appearance of the penalties he faced, including the

term of supervised release to follow any sentence of incarceration.   He

again said that Stokes had told him he would receive between ten and

fourteen years regardless of whether he pleaded guilty or went to trial.

John Stokes testified that he was at the hearing because he was

subpoenaed.   Stokes reviewed his background as an attorney. He has

been practicing law since 1993 or 1994 and has tried hundreds of cases

including at least six in federal court.   Bilus' family retained Stokes to

represent Bilus when the case was pending in state court.

Stokes said that during the representation Bilus never expressed

dissatisfaction with his services.   Bilus gave Stokes unfettered authority to

consult with family members and other attorneys.   Stokes characterized

the case as a "helicopter case" because throughout the case either Bilus'

family or other attorneys, who had been contacted by Bilus' family, were

looking over his shoulder.   Stokes discussed mainly suppression and post-

trial or appellate issues with the other attorneys. According to Stokes, he

consulted with more people on this case than he had in his thirty-three

years of practicing law, and he has not worked as hard on a case before or

since.   Stokes was assisted in the representation by his wife, who was
then his legal assistant and is now his law partner.

Stokes recalled two calls from the Office of the United States Attorney
inquiring about the status of the state case. Notably, Stokes denied that at
no time, including during these calls, was there an offer or promise by the
United States Attorney not to federally indict Bilus.

Although Stokes did not recall the details of Bilus' arraignment he
said there was nothing out of the ordinary that occurred during the
arraignment.   Stokes pointed out that in his experience the magistrate
judge always advises the defendant at the arraignment of both the charges
and the potential penalties.   Had there been an irregularity, Stokes would
have immediately memorialized it.

Stokes testified that before trial he answered questions Bilus had
about the burden of proof, the evidence that would be presented, and what
might happen at trial and what would happen if Bilus was found guilty.
Before Bilus was federally indicted and while Bilus' case was pending in
state court, Stokes and Bilus discussed the concept of dual sovereignty

and the fact that the federal Government could take any part of the case at any time.

Stokes also discussed with Bilus possible sentences and the benefit to pleading guilty in the federal case.   Stokes told Bilus that the only benefit of pleading guilty would have been the two-level adjustment for acceptance of responsibility because, referring to AUSA Williams, "you never made a plea offer."   Stokes recalled asking Williams at the time what the Government could do for his client, and Williams responded that Bilus could plead guilty straight up.   Stokes emphasized that there was no plea agreement involving a specific sentence and he would have been "shocked" if there had been because the United States Attorney's Office in the Northern District of Florida does not, and has never made in a criminal case, a plea offer involving a specific sentence.

Stokes and Bilus did not discuss a conditional plea because Stokes believed there were good justiciable issues to argue before the jury.   He noted that in his view by accepting a conditional plea, a defendant would give up potentially winnable issues at trial.   Based on the extensive discussions he had with Bilus, Stokes did not think it was possible that

Bilus believed he had to go to trial to preserve the Fourth Amendment issues.   Stokes firmly believed that a guilty plea would not have been in Bilus' best interest, and he would have done everything he could to convince Bilus to go to trial.   Stokes also noted that once Bilus was released on pretrial release, Bilus clearly was not interested in a guilty plea that would result in incarceration and it became obvious that they were going to trial in both state and federal court.

Stokes also unequivocally testified that the Government had never agreed not to indict Bilus if he pleaded guilty in state court.   Stokes remarked that If the government had made such a promise, Stokes would have asked the AUSA to put it in writing.   Stokes confirmed there was no memo in his file evidencing such a conversation or comment, although on cross-examination he stated that he had not reviewed his entire file.

On cross-examination, Stokes was asked why Williams would have had reason to call Stokes before the federal indictment.   Stokes recalled only that Williams called to check on the status of the state case.   There was no "threat" and no plea offer, but Stokes would have made his client aware that the Government had called.

Case Nos.: 1:12cr42/AW/GRJ; 1:17cv57/AW/GRJ

Stokes said he talked with Bilus about the sentences he faced in state and federal court.   Stokes testified that as a routine practice he advises his clients about supervised release although he had no specific recollection of having done so in this case.   Stokes noted that even if he did not discuss it, the issue of supervised release would have been mentioned at some point in the proceedings, such as the initial arraignment.   There was no doubt in Stokes' mind that Bilus had been advised of this.

The traffic stop conducted on Bilus' vehicle was a major focus of both the state and the federal case.   Stokes still believes that the suppression issue was a valid legal point.   Nonetheless, once the motion was denied, Stokes said there was nothing that could have been done at the jury trial to address the stop, although an acquittal would have addressed it.

Stokes recalled that once Bilus made bail in the state case, it was clear that the case would be going to trial.   Stokes stated that Bilus was far more adamant about going to trial than pleading.   While Stokes characterized Bilus as "open to" a plea of guilty, notably Bilus rejected a negotiated offer of ten years in his state court case and went to trial.   In

federal court, Bilus did not give counsel any indication that he was willing to plead guilty.   Stokes described the value of the two-level reduction as "minimal," so there was not much discussion between the two about Bilus entering a guilty plea after the motion to suppress was denied.   Stokes also believed a guilty plea was not in his client's best interest.

Stokes identified the strongest argument for trial as the fact that the Government's expert could not say how the images got on the computer or that they were viewed.   The laptop was in a common area of an apartment shared by multiple people.   Despite his belief in the strength of this trial issue, Stokes continued to believe the motion to suppress was the strongest issue overall in the case.

Stokes denied telling Bilus that the only way to preserve the suppression issue was to go to trial.   He testified that although he did not use the term "conditional plea" he had told Bilus he could plead guilty and still preserve the issue. Stokes did not remember previously having had a client enter a conditional plea in federal court.   He recalled having discussed Bilus' options many times with him.   Stokes also noted that

Stokes' wife and now law partner was present at all meetings between him and Bilus.

The court inquired about the post-appellate meeting at the prison in which Bilus appeared upset. Stokes attributed this to a misunderstanding about Bilus believing there had been a plea offer from the Government.

## IV. **ANALYSIS OF PETITIONER'S CLAIMS**

### A. *General Standard of Review*

"Section 2255 does not provide a remedy for every alleged error in conviction and sentencing." *Spencer v. United States*, 773 F. 3d 1132, 1138 (11th Cir. 2014). Collateral review is not a substitute for direct appeal, and therefore the grounds for collateral attack on final judgments pursuant to section 2255 are extremely limited. A prisoner is entitled to relief under section 2255 if the court imposed a sentence that (1) violated the Constitution or laws of the United States, (2) exceeded its jurisdiction, (3) exceeded the maximum authorized by law, or (4) is otherwise subject to collateral attack. *See* 28 U.S.C. § 2255(a); *McKay v. United States*, 657 F.3d 1190, 1194 n.8 (11th Cir. 2011). "Relief under 28 U.S.C. § 2255 'is reserved for transgressions of constitutional rights and for that narrow

compass of other injury that could not have been raised in direct appeal and would, if condoned, result in a complete miscarriage of justice.'" *Lynn v. United States*, 365 F.3d 1225, 1232 (11th Cir. 2004) (citations omitted). The "fundamental miscarriage of justice" exception recognized in *Murray v. Carrier*, 477 U.S. 478, 496 (1986), provides that it must be shown that the alleged constitutional violation "has probably resulted in the conviction of one who is actually innocent . . . ."

The law is well established that a district court need not reconsider issues raised in a § 2255 motion which have been resolved on direct appeal. *Stoufflet v. United States*, 757 F.3d 1236, 1239 (11th Cir. 2014); *United States v. Nyhuis*, 211 F.3d 1340, 1343 (11th Cir. 2000); *Mills v. United States*, 36 F.3d 1052, 1056 (11th Cir. 1994). Once a matter has been decided adversely to a defendant on direct appeal, it cannot be re-litigated in a collateral attack under section 2255. *Nyhuis*, 211 F.3d at 1343 (quotation omitted). Broad discretion is afforded to a court's determination of whether a particular claim has been previously raised. *Sanders v. United States*, 373 U.S. 1, 16 (1963) ("identical grounds may often be proved by different factual allegations . . . or supported by different

legal arguments . . . or couched in different language . . . or vary in
immaterial respects").

Because a motion to vacate under section 2255 is not a substitute for
direct appeal, issues which could have been raised on direct appeal are
generally not actionable therein and will be considered procedurally barred.
*Lynn*, 365 F.3d at 1234–35; *Bousley v. United States*, 523 U.S. 614, 621
(1998); *McKay v. United States*, 657 F.3d 1190, 1195 (11th Cir. 2011).   An
issue is "'available' on direct appeal when its merits can be reviewed
without further factual development."   *Lynn*, 365 F.3d at 1232 n.14
(quoting *Mills*, 36 F.3d at 1055).   Absent a showing that the ground of error
was unavailable on direct appeal, a court may not consider the ground in a
section 2255 motion unless the defendant establishes (1) cause for not
raising the ground on direct appeal, and (2) actual prejudice resulting from
the alleged error, that is, alternatively, that he is "actually innocent."   *Lynn*,
365 F.3d at 1234; *Bousley*, 523 U.S. at 622 (citations omitted).   To show
cause for procedural default, a defendant must show that "some objective
factor external to the defense prevented [him] or his counsel from raising
his claims on direct appeal and that this factor cannot be fairly attributable

to [defendant's] own conduct."   *Lynn*, 365 F.3d at 1235.   A meritorious

claim of ineffective assistance of counsel can constitute cause.   *See*

*Nyhuis*, 211 F.3d at 1344.

Ineffective assistance of counsel claims generally are not cognizable

on direct appeal and are properly raised by a § 2255 motion regardless of

whether they could have been brought on direct appeal.   *Massaro v.*

*United States*, 538 U.S. 500, 503 (2003); *see also United States v. Campo*,

840 F.3d 1249, 1257 n.5 (11th Cir. 2016).   To prevail on a constitutional

claim of ineffective assistance of counsel, a defendant must demonstrate

both that counsel's performance was below an objective and reasonable

professional norm and that he was prejudiced by this inadequacy.

*Strickland v. Washington*, 466 U.S. 668, 686 (1984); *Williams v. Taylor*, 529

U.S. 362, 390 (2000); *Darden v. United States*, 708 F.3d 1225, 1228 (11th

Cir. 2013). In applying *Strickland*, the court may dispose of an ineffective

assistance claim if a defendant fails to carry his burden on either of the two

prongs.   *Strickland*, 466 U.S. at 697; *Brown v. United States*, 720 F.3d

1316, 1326 (11th Cir. 2013); *Holladay v. Haley*, 209 F.3d 1243, 1248 (11th

Cir. 2000) ("[T]he court need not address the performance prong if the defendant cannot meet the prejudice prong, or vice versa.").

*Strickland*'s two-part test also applies to guilty pleas.  *Lafler v. Cooper*, 566 U.S. 156, 162-63 (2012) (citing *Hill v. Lockhart*, 474 U.S. 52, 58 (1985)).   The Sixth Amendment right to the effective assistance of counsel extends specifically "to the negotiation and consideration of plea offers that lapse or are rejected."   *In re Perez*, 682 F.3d 930, 932 (11th Cir. 2012) (citing *Missouri v. Frye*, 566 U.S. 134, 138-145 (2012); *Lafler*, 566 U.S. at 163).   A defendant who claims that ineffective advice led him to reject a plea offer must show that but for ineffective assistance of counsel, he would have accepted the plea, and that the conviction or sentence or both under the terms of the plea offer would have been less severe than under the judgment and sentence that were imposed.   *Lafler*, 566 U.S. at 164.   A defendant's "after the fact testimony concerning his desire to plead, without more, is insufficient to establish" prejudice.   *Pericles v. United States*, 567 F. App'x 776, 782 (11th Cir. 2014) (quoting *Diaz v. United States*, 930 F.2d 832, 835 (11th Cir. 1991)); *Rosin v. United States*, 786 F.3d 873 (11th Cir. 2015).   A defendant's insistence that he is

innocent is a "relevant consideration" that "makes it more difficult to accept

his claim" that he would have agreed to a plea deal.    *See Osley v. United*

*States*, 751 F.3d 1214, 1224–25 (11th Cir. 2014).

In determining whether counsel's conduct was deficient, this court

must, with much deference, consider "whether counsel's assistance was

reasonable considering all the circumstances."    *Strickland*, 466 U.S. at

688; *see also Dingle v. Sec'y for Dep't of Corr.*, 480 F.3d 1092, 1099 (11th

Cir. 2007).    Reviewing courts "must indulge a strong presumption that

counsel's conduct fell within the wide range of reasonable professional

assistance."    *Strickland*, 466 U.S. at 689; *see also Chandler v. United*

*States*, 218 F.3d 1305, 1315–16 (11th Cir. 2000) (discussing presumption

of reasonableness of counsel's conduct); *Lancaster v. Newsome*, 880 F.2d

362, 375 (11th Cir. 1989) (emphasizing that petitioner was "not entitled to

error-free representation").    Counsel's performance must be evaluated

with a high degree of deference and without the distorting effects of

hindsight.    *Strickland*, 466 U.S. at 689.    To show counsel's performance

was unreasonable, a defendant must establish that "no competent counsel

would have taken the action that his counsel did take."    *Gordon v. United*

*States*, 518 F.3d 1291, 1301 (11th Cir. 2008) (citations omitted); *Chandler*, 218 F.3d at 1315.   "[T]he fact that a particular defense ultimately proved to be unsuccessful [does not] demonstrate ineffectiveness."   *Chandler*, 218 F.3d at 1314.   When reviewing the performance of an experienced trial counsel, the presumption that counsel's conduct was reasonable is even stronger, because "[e]xperience is due some respect."   *Chandler*, 218 F.3d at 1316 n.18.

To establish prejudice, a defendant must show that, but for counsel's deficient performance, the outcome of the proceeding would have been different.   *Strickland*, 466 U.S. at 694.   "The likelihood of a different result must be substantial, not just conceivable."   *Harrington v. Richter*, 562 U.S. 86, 112 (2011) (quoting *Strickland*).   For the court to focus merely on "outcome determination," however, is insufficient; "[t]o set aside a conviction or sentence solely because the outcome would have been different but for counsel's error may grant the defendant a windfall to which the law does not entitle him."   *Lockhart v. Fretwell*, 506 U.S. 364, 369–70 (1993); *Allen v. Sec'y, Fla. Dep't of Corr.*, 611 F.3d 740, 754 (11th Cir. 2010).   A defendant therefore must establish "that counsel's errors were

so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Lockhart*, 506 U.S. at 369 (quoting *Strickland*, 466 U.S. at 687). Or in the case of alleged sentencing errors, a defendant must demonstrate that there is a reasonable probability that, but for counsel's errors, the result of the proceeding would have been less harsh due to a reduction in the defendant's offense level. *Glover v. United States*, 531 U.S. 198, 203–04 (2001). A significant increase in sentence is not required to establish prejudice, as "any amount of actual jail time has Sixth Amendment significance." *Id.* at 203.

To establish ineffective assistance, a defendant must provide factual support for his contentions regarding counsel's performance. *Smith v. White*, 815 F.2d 1401, 1406–07 (11th Cir. 1987). Bare, conclusory allegations of ineffective assistance are insufficient to satisfy the *Strickland* test. *See Boyd v. Comm'r, Ala. Dep't of Corr.*, 697 F.3d 1320, 1333–34 (11th Cir. 2012); *Garcia v. United States*, 456 F. App'x 804, 807 (11th Cir. 2012) (*citing Yeck v. Goodwin*, 985 F.2d 538, 542 (11th Cir. 1993)); *Wilson v. United States*, 962 F.2d 996, 998 (11th Cir. 1992).

Furthermore, counsel is not constitutionally deficient for failing to preserve or argue a meritless claim.   *Denson v. United States*, 804 F.3d 1339, 1342 (11th Cir. 2015) (citing *Freeman v. Attorney General, Florida*, 536 F.3d 1225, 1233 (11th Cir. 2008)).   This is true regardless of whether the issue is a trial or sentencing issue.   *See, e.g.*, *Sneed v. Florida Dep't of Corrections*, 496 F. App'x 20, 27 (11th Cir. 2012) (failure to preserve meritless *Batson* claim not ineffective assistance of counsel);   *Lattimore v. United States*, 345 F. App'x 506, 508 (11th Cir. 2009) (counsel not ineffective for failing to make a meritless objection to an obstruction enhancement); *Brownlee v. Haley*, 306 F.3d 1043, 1066 (11th Cir. 2002) (counsel was not ineffective for failing to raise issues clearly lacking in merit).

Finally, the Eleventh Circuit has recognized that given the principles and presumptions set forth above, "the cases in which habeas petitioners can properly prevail . . . are few and far between."   *Chandler*, 218 F.3d at 1313.   This is because the test is not what the best lawyers would have done or even what most good lawyers would have done, but rather whether some reasonable lawyer could have acted in the circumstances as defense

counsel acted.    *Dingle*, 480 F.3d at 1099; *Williamson v. Moore*, 221 F.3d 1177, 1180 (11th Cir. 2000).    "Even if counsel's decision appears to have been unwise in retrospect, the decision will be held to have been ineffective assistance only if it was 'so patently unreasonable that no competent attorney would have chosen it.'"    *Dingle*, 480 F.3d at 1099 (quoting *Adams v. Wainwright*, 709 F.2d 1443, 1445 (11th Cir. 1983)).

An evidentiary hearing is unnecessary when "the motion and files and records conclusively show that the prisoner is entitled to no relief."    *See* 28 U.S.C. § 2255(b); *Rosin v. United States*, 786 F.3d 873, 877 (11th Cir. 2015); *Gordon v. United States*, 518 F.3d 1291, 1301 (11th Cir. 2008). Not every claim of ineffective assistance of counsel warrants an evidentiary hearing.    *Gordon*, 518 F.3d at 1301 (citing *Vick v. United States*, 730 F.2d 707, 708 (11th Cir. 1984)).    To be entitled to a hearing, a defendant must allege facts that, if true, would prove he is entitled to relief.    *See Hernandez v. United States*, 778 F.3d 1230, 1234 (11th Cir. 2015).    A hearing is not required on frivolous claims, conclusory allegations unsupported by specifics, or contentions that are wholly unsupported by the record.    *See Winthrop–Redin v. United States*, 767 F.3d 1210, 1216 (11th

Cir. 2014) (explaining that "a district court need not hold a hearing if the allegations [in a § 2255 motion] are . . . based upon unsupported generalizations") (internal quotation marks omitted); *Peoples v. Campbell*, 377 F.3d 1208, 1237 (11th Cir. 2004).   Even affidavits that amount to nothing more than conclusory allegations do not warrant a hearing.   *Lynn*, 365 F.3d at 1239.   Finally, disputes involving purely legal issues can be resolved by the court without a hearing.   Based on this authority, the court limited the scope of the evidentiary hearing to whether Bilus' attorney rendered constitutionally ineffective assistance during the plea process as alleged in Grounds Two and Three of his motion.

## B. Petitioner's Claims

### 1. Ground One—Concurrent versus Consecutive Sentencing

Bilus first claims that counsel was constitutionally ineffective because he did not argue for the concurrency of Bilus' federal and state sentences and did not draw the court's attention to a pending amendment to U.S.S.G. § 5G1.3(b) that became effective November 1, 2014.   Bilus asserts that counsel could have raised this argument at his original sentencing, on appeal, or after resentencing.

Bilus was originally sentenced in May of 2014, pursuant to the November 2013 version of the Sentencing Guidelines.   At that time, § 5G1.3 explained how courts should determine whether the federal sentence of a defendant who was subject to an "undischarged term of imprisonment" should run concurrently or consecutively to his other sentence.   Section 5G1.3(b) stated that a federal sentence should be imposed to run concurrently to an undischarged term of imprisonment if "a term of imprisonment resulted from another offense that is relevant conduct to the instant offense of conviction" under § 1B1.3 (Relevant Conduct) and that conduct "was the basis for an increase in the offense level for the instant offense" under either Chapter Two or Chapter Three of the Guidelines.

Notably, Bilus was not sentenced in state court until June 4, 2014. Therefore, in May of 2014 he was not subject to an undischarged term of imprisonment, and § 5G1.3, as it existed at his sentencing, was inapplicable.   Controlling Supreme Court precedent afforded district courts discretion to run federal sentences concurrent with or consecutive to an anticipated but not yet imposed state sentence.   *Setser v. United States*,

132 S. Ct. 1463 (2012).   In response to *Setser,* the Sentencing

Commission proposed an Amendment to § 5G1.3 that had not yet been

implemented at the time of Bilus' sentencing.   Amendment 787 to the

Sentencing Guidelines, which become effective November 1, 2014, added

the following provision to § 5G1.3:

> (c) If subsection (a) does not apply, and a state term of
> imprisonment is anticipated to result from another offense that
> is relevant conduct to the instant offense of conviction under the
> provisions of subsections (a)(1), (a)(2), or (a)(3) of § 1B1.3
> (Relevant Conduct), the sentence for the instant offense shall
> be imposed to run concurrently to the anticipated term of
> imprisonment."

> A new application note was also added.   This note provides:

> 3. Application of Subsection (c).—Subsection (c) applies to
> cases in which the federal court anticipates that, after the
> federal sentence is imposed, the defendant will be sentenced in
> state court and serve a state sentence before being transferred
> to federal custody for federal imprisonment.   In such a case,
> where the other offense is relevant conduct to the instant
> offense of conviction under the provisions of subsections (a)(1),
> (a)(2), or (a)(3) of § 1B1.3 (Relevant Conduct), the sentence for
> the instant offense shall be imposed to run concurrently to the
> anticipated term of imprisonment.

U.S.S.G. § 5G1.3, comment (n.3).

The relevant portion of the Sentencing Commission's reason for the

addition of subsection 5G1.3(c) was as follows:

This amendment is a further response to the Supreme Court's decision in *Setser v. United States*, 132 S. Ct. 1463 (2012). Last year, the Commission amended the Background Commentary to §5G1.3 to provide heightened awareness of the court's authority under *Setser*. *See* U.S.S.G. App. C, Amend. 776 (effective November 1, 2013). In *Setser*, the Supreme Court held that a federal sentencing court has the authority to order that a federal term of imprisonment run concurrent with, or consecutive to, an anticipated but not yet imposed state sentence. This amendment reflects the Commission's determination that the concurrent sentence benefits of subsection (b) of §5G1.3 should be available not only in cases in which the state sentence has already been imposed at the time of federal sentencing (as subsection (b) provides), but also in cases in which the state sentence is anticipated but has not yet been imposed, as long as the other criteria in subsection (b) are satisfied (*i.e.*, the state offense is relevant conduct under subsections (a)(1), (a)(2), or (a)(3) of §1B1.3, and subsection (a) of §5G1.3 does not apply). By requiring courts to impose a concurrent sentence in these cases, the amendment reduces disparities between defendants whose state sentences have already been imposed and those whose state sentences have not yet been imposed. The amendment also promotes certainty and consistency.

https://www.ussc.gov/guidelines/amendment/787.

The "concurrent sentence benefits" of §5G1.3(b):

require a court to adjust the sentence and impose concurrent sentences in any case in which the prior offense is relevant conduct under the provisions of §1B1.3(a)(1), (a)(2), or (a)(3), regardless of whether the conduct from the prior offense formed the basis for a Chapter Two or Chapter Three increase.

*Id.*

Case Nos.: 1:12cr42/AW/GRJ; 1:17cv57/AW/GRJ

Therefore, under the proposed amendment, the "relevant conduct" in question need not have led to an increase in a defendant's offense level to have been considered for purposes of determining whether a sentence should run consecutively or concurrently.

At sentencing, defense counsel requested the court to run Bilus' federal and anticipated state sentences concurrently, citing the Supreme Court's decision in *Setser*.   (ECF No. 157 at 44-45.)   To support his position, counsel referenced Bilus' state sentencing guidelines score sheet illustrating that his client faced a sentence of 14 to 15 years on the state charges.   (ECF No. 157 at 44-45.)   Judge Paul stated:

> I thought about this prior to coming in here.   It seems to me that the matter he's before this Court on, which is child pornography, is so distinct from the actual crime itself of the victimization of a 11 or 12 year old – I forget the age of the young girl – that you tried over in the state court, that is so different, and that I have actually decided to leave it up to the state judge.   I know I can recommend it to be consecutive or concurrent and I will take no action.

(ECF No. 157 at 46-47.)

The district judge's explicit comments at sentencing refute Bilus' assertion in his motion that had counsel mentioned the proposed amendment to § 5G1.3, the court "would have postponed sentencing and

imposed concurrency to the state sentence."   (ECF No. 178-1 at 8-9.)

Under *Setser,* the district judge knew he had the authority to impose a

concurrent sentence, but nonetheless chose not to do so.   Thus, it is not

logical to assume the district judge would have been inclined to delay

sentencing an additional six months for the amendment to take effect.   As

such, Bilus cannot show prejudice.

Bilus similarly cannot show prejudice with respect to his claim that his

attorney was ineffective because he did not raise this issue on appeal.

Regardless of whether counsel was aware of the pending guidelines

amendment (*see* ECF No. 178-1 at 9),[9] Bilus was properly sentenced in

accordance with existing law.   Thus, this argument would not have

provided a basis to reverse his sentence.   Counsel cannot be found

constitutionally ineffective for not raising a meritless claim on appeal.

*Brown v. United States*, 720 F.3d 1316, 1335 (11th Cir. 2013); *Shere v.*

*Sec'y Fla. Dep't of Corr.*, 537 F.3d 1304, 1311 (11th Cir. 2008); *Nyhuis*, 211

at 1344 (citing *Alvord v. Wainwright*, 725 F.2d 1282, 1291 (11th Cir. 1984).

---

[9] Bilus specifically asked about the application of any proposed amendments to the
Sentencing Guidelines in a letter to counsel dated July 12, 2013.   (*See* ECF No. 182-1
at 4.)

Case Nos.: 1:12cr42/AW/GRJ; 1:17cv57/AW/GRJ

Finally, Bilus contends counsel was ineffective because he did not bring this matter to the district court's attention in the "Motion for Plenary, De Novo, Resentencing Hearing" (ECF No. 171), which was filed after the amendment became effective.    Again, Bilus cannot show prejudice as required by *Strickland.*    Bilus admitted in this motion that vacatur of a single count of conviction did not require a resentencing hearing, *United States v. Joseph*, 569 F. App'x 861, 863-64 (11th Cir. 2014), but urged the court to hold a resentencing hearing at which it could reconsider its decision to defer the issue of concurrency with the state sentence, again citing *Setser.*    (ECF No. 171 at 3-4.)

The district court denied the motion, quoting a statement from Bilus' original sentencing: "'the matter he's before this Court on, which is child pornography, is so distinct from the actual crime itself of the victimization of a 11 or 12 year old' that the Court would decline to run the sentences concurrently."    (ECF No. 173 at 3, (quoting ECF No. 157 at 46-47.))    The language of the court's order does not suggest that the district judge would have taken a contrary position.

Bilus' final argument is that even if he has not proven ineffective assistance of counsel, "the court should consider the merits of the argument and find that the Petitioner's sentences should be concurrent, considering all circumstances."   (ECF No. 178-1 at 12.)   Of course, the district judge, who ably presided over Bilus' case, is no longer on the bench and thus his position cannot be confirmed.   Nonetheless, the purpose of a §2255 motion is to raise constitutional infirmities in a conviction. It is not a vehicle to reargue for a new sentence based upon "all of the circumstances."

In sum, Bilus has not established he is entitled to prevail on a constitutional claim for relief.

### 2. Ground Two—Plea Process

Bilus next contends, in a claim involving multiple sub-parts, that counsel was constitutionally ineffective with respect to his advice and actions during the plea process.   Bilus maintains that the errors collectively had an impact on his decision to proceed to trial.

### a. Failure to pursue a conditional guilty plea/ plea agreement

Bilus first asserts trial counsel was ineffective because he failed to pursue a conditional guilty plea, and because counsel told Bilus that the only way to preserve the issues raised in the motion to suppress was to go to trial.   (ECF No. 178-1 at 13.)   Such advice, if given, was legally incorrect.   With the consent of the court and the Government, a defendant may enter a conditional plea, reserving in writing the right to have an appellate court review an adverse determination of a specified pretrial motion.   Fed. R. Crim. P. 11(a)(2); *see United States v. Pierre*, 120 F. 3d 1153, 1155 (11th Cir. 1997); *United States v. Correa*, Case 1:07cr11RH/GRJ, 2014 WL 5148214 (N.D. Fla. Oct. 13, 2014) (noting that "in this district, the Government often consents" to the entry of a conditional plea).

At the hearing, Bilus testified that if he had known he could have pursued a conditional guilty plea, or that he could have entered a guilty plea to the court and preserved the suppression issues, he would not have gone to trial.   He stated that he "only" went to trial to preserve the suppression issue.

Attorney Stokes testified that he discussed with Bilus the fact that Bilus could plead and preserve the suppression issue, albeit without using the specific language "conditional plea."   Stokes emphasized that Bilus was not interested in accepting a plea that required any jail time, and he specifically pointed out that Bilus had rejected a negotiated plea for a ten-year sentence in state court.   Stokes said in any event he would have counseled Bilus against accepting a guilty plea, had Bilus appeared so inclined, because counsel believed there was a possibility of success at trial.

Stokes and Bilus both testified credibly about this issue the hearing. Bilus admitted that he had had no prior contact with the legal system and that he began to learn and understand more about the law only after the proceedings against him concluded.   It is possible that the semantics of counsel's explanation led to Bilus' confusion when he later encountered the term of art "conditional plea" in his research.   Nonetheless, the court credits the testimony of experienced trial counsel about the discussions, rather than that of his client, who was having his first experience with the legal system.   Stokes testified without equivocation that even though

Stokes might not have used the term "conditional guilty plea" Bilus was advised he could still preserve the suppression issue even if Bilus entered a guilty plea.   Stokes also believed there was a good chance of establishing a reasonable doubt about who was responsible for the child pornography discovered at Bilus' shared residence, and Bilus went to trial believing there was a chance he would be acquitted.   Even if Stokes' belief in the likelihood of acquittal was ultimately mistaken in hindsight, the fact that counsel did not pursue a conditional plea or urge Bilus to accept a plea was not constitutionally ineffective.   In short, the court cannot say that no reasonable lawyer would have pursued the course of action that counsel did in this case.

In his motion, Bilus also claims that the Government offered him a plea deal and suggests that counsel was ineffective for not pursuing, or urging Bilus to accept, the offer. In support Bilus references a "proposed plea agreement, which included concurrency to his state sentence" and included a specific sentence of fourteen years.   (ECF No. 178-1 at 13, 17, 19.)   Notably, the agreement Bilus describes presupposes his conviction in the state case, although his trial on the state charges did not begin until

well after his conviction in this case, on November 5, 2013.   This is not

logical.   In its written response, the Government "contests this factual

allegation" and unequivocally states that "[t]here was no federal plea offer."

(ECF No. 184 at 15.)

As confirmed by the government at the evidentiary hearing the U.S.

Attorney's Office for this district does not offer "plea agreements" containing

a specific sentence and has not done so for the twenty-two years the

assigned AUSA has practiced in this district.   Although the Government

may agree not to seek enhancements, there is no question that in this

district in all cases the final sentence is always a matter to be determined

by the district judge after consideration of the PSR.   At the evidentiary

hearing, experienced trial counsel Stokes confirmed, twice, that the

Government does not make plea offers.   AUSA Williams also confirmed

this at the hearing in response to the Court's questions.

Bilus claims in his motion that he would have pleaded guilty pursuant

to the alleged plea agreement offered by the Government if trial counsel

had secured preservation of suppression issues, or, if the issues were

preserved, he would have pleaded guilty "directly to the Court," apparently

without a "plea deal." (ECF No. 178-1 at 13.) Bilus also makes the contradictory statement that "he would have pled guilty (if properly advised) even if the Government did not agree to allow him to preserve the suppression issues." (*Id.* at 15.) On this record the Court concludes that there is no evidence the government made a plea offer to Bilus, which Stokes failed to communicate to Bilus. Consequently, Counsel cannot be constitutionally ineffective for failing to pursue a plea agreement or offer that did not exist.

This court can dispose of an ineffective assistance of counsel claim if the petitioner fails to meet his burden on either the performance prong or the prejudice prong. Although the Court's conclusion that Stokes was not ineffective on the performance prong ends the inquiry the court alternatively concludes that Bilus has not shown prejudice.

The "prejudice" Bilus complains about is that his federal and state sentences are not concurrent. (ECF No. 185 at 7.) Notably, however, the record does not suggest that the district judge would have ordered the federal sentence to run concurrently with the as yet unimposed state sentence. Bilus' statement that prejudice is established by "considering

any other benefits the Petitioner may have had a reasonable probability of receiving had he pled" (*id.*) is speculative and conclusory and does not demonstrate that relief is warranted.

### b. Misadvice about consequences of proceeding to trial

Bilus contends that counsel misled him about three things: (1) the likelihood that his state and federal sentences would run consecutively; (2) the possibility he faced up to a lifetime of supervised release; and (3) the loss of an acceptance of responsibility reduction.    Although Bilus frames these matters as consequences he was facing *only* if he proceeded to trial and was convicted, this is not wholly accurate.

First, Bilus admitted that he discussed with his attorney before trial the matter of concurrent or consecutive sentencing.    He chose to go to trial believing that, if convicted, "his sentence would *likely* run concurrent." (ECF No. 178-1 at 16 (emphasis added).)    This belief is corroborated by his testimony at the hearing, wherein he emphasized that counsel did not guarantee a concurrent sentence.    Counsel's overstatement of the odds that the sentences would run concurrently, or an erroneous prediction regarding concurrency, is not *per se* ineffective assistance of counsel.

Perhaps more significantly, there is nothing in the record to support a finding that if Bilus had entered a guilty plea rather than proceeded to trial the district judge would have chosen to run his sentences concurrently.   As discussed above, Bilus' statement that there existed a "negotiated plea agreement ensuring concurrency" with a sentence in a case in which Bilus had not yet been tried, much less convicted and sentenced, has no evidentiary support in the record, other than Bilus' self-serving conclusional statements.   (ECF No. 178-1 at 16, 17.)

Second, even if counsel did not inform Bilus that he faced a life term of supervised release, he cannot show prejudice.   Importantly, the imposition of the term of supervised release did not depend upon whether Bilus was convicted at trial or via a plea of guilty.   Bilus was advised of the penalties he faced at arraignment.   Had he entered a guilty plea, the court would have again informed him of this before accepting his plea.   Thus, Bilus would not have avoided this penalty by pleading guilty.   If anything, his professed desire to avoid the supervised release would have weighed in favor of putting the Government's case to the test at trial and possibly secure an acquittal.

Bilus' third contention is that counsel failed to inform him of a possible two to three level reduction for acceptance of responsibility if he entered a guilty plea.   He claims that had he known of the possible reduction, it "would have influenced him to plead guilty or at least inform the Court that he was only proceeding to trial to preserve his pretrial suppression motion." (ECF No. 178-1 at 19.)   His guidelines range could have been reduced if he had pleaded guilty and accepted responsibility for his actions, rather than being convicted after a jury trial.   Given the fact that the fourteen-year sentence Bilus ultimately received was identical to the fourteen-year sentence Bilus claims he was offered and would have accepted (ECF No. 178-1 at 19), the court concludes he has not shown prejudice.

### c. Failure to research applicable law

Bilus next contends that counsel misadvised him about what the Government was required to prove during the trial, and that as a result of counsel's misadvice, he "rejected the Government's offer of fourteen years."   (ECF No. 178-1 at 19.)   Specifically, Bilus says that counsel told him the Government was required to prove that Bilus actually viewed the child pornography found on his computer.   Bilus claims in his motion that

he agreed to go to trial because he did not think the Government had any evidence that he viewed the child pornography, not because he insisted he was innocent.   (*Id.* at 20.)

Assuming counsel provided this advice, it would have been erroneous.   The plain language of the statute does not require that the material be "viewed."   "Viewing" is one means of proving knowing receipt of child pornography.   A violation of 18 U.S.C. § 2252A(a)(2), can be proven if a defendant "intentionally views, acquires, or accepts child pornography on a computer from an outside source."   *United States v. Pruitt*, 638 F. 3d 763, 766 (11th Cir. 2011).   Inadvertent receipt of child pornography is not a violation of the statute.   *Id.*   Bilus is correct that the Government had no proof that he viewed the unlawful images and videos, which the Government itself admitted during closing argument.   (ECF No. 155 at 5.)   His attorney also argued that there was no proof the images had been viewed.   (*Id.* at 35.)   Notably, however, the presence of the images and videos containing child pornography on Bilus' computer sufficed to prove a violation of the statute.   The jury was instructed that Bilus could be found guilty of Count One if he knowingly received or

attempted to receive items of child pornography, and if, when he received the items, he believed them to be child pornography.   (ECF 59 at 6.)   With respect to the lesser included offense in Count Two, the jury was instructed that the Government had to prove that Bilus knowingly possessed or accessed with intent to view child pornography believing the items he possessed or accessed were child pornography.   (*Id.* at 6-7.)

While Stokes did not testify that viewing the child pornography was an element of the offense Stokes suggested that the fact the computer was located in residence with other occupants having access to it in conjunction with the lack of evidence that Bilus actually looked at the child pornography, was a viable theory of defense at trial. But even assuming counsel was deficient with respect to his advice about the Government's burden, Bilus's claim on this ground fails because Bilus received the same sentence he claims he would have agreed to under the alleged plea offer from the Government.   Consequently, Bilus cannot demonstrate prejudice even if Stokes misadvised him about the government's burden.

### d. Objective Evidence Supporting Claim Two

Bilus claims the record is replete with evidence that he would have entered a plea of guilty but for counsel's lack of advice or misadvice.   Bilus did not submit an affidavit in support of the motion and memorandum, although he signed the 2255 form under penalty of perjury.   (ECF No. 177 at 14.)

Bilus enumerates six evidentiary issues that, he claims, tend to support his position that he would have entered a guilty plea.

First, he asserts that he did not insist on going to trial, but rather only reluctantly agreed to do so due to counsel's advice.   This is a self-serving statement for which Bilus has pointed to no record support or any contemporaneous proof.   At the evidentiary hearing Bilus testified that he was not adamant one way or the other about going to trial versus entering a guilty plea.   Although Bilus argues he was forced to go to trial to preserve the suppression issue, the record supports Stokes testimony that he had explained the available options to him.   While Bilus may now have after the fact buyer's remorse about the choice he made to go to trial, the testimony at the evidentiary hearing does not demonstrate that counsel

was constitutionally ineffective. While Stokes may have believed the case was defensible at trial, neither Bilus' testimony nor Stokes' testimony establishes that Bilus was forced to go to trial.

Second, Bilus says he did not protest his innocence pre- or post-trial. During his remarks to the court, Bilus said he was "not here to dispute the facts or to argue anything" but countered that by saying "I was not and I am not a predator.   I don't prey on young children and I don't have the attraction."   (ECF No. 157 at 13, 15.)   Nonetheless, at sentencing Bilus did not address the facts underlying his case, noor express any remorse for his actions or understanding of the harm caused but merely made a general comment that he was "sorry to be before [the court] and for the events up to this point."   (ECF No. 157 at 13.)

Third, Bilus asked trial counsel if he should ask for, or if trial counsel would ask for, an acceptance of responsibility reduction because he had "only exercised his constitutional right to go to trial to preserve what he believed to be strong suppression issues."   (ECF No. 178-1 at 21.)   Bilus does not point to record evidence of this, and his post-sentencing letter to counsel, while mentioning his interest in acceptance of responsibility

Case Nos.: 1:12cr42/AW/GRJ; 1:17cv57/AW/GRJ

neither supports nor contradicts his statement about his "only" reason for going to trial.   (ECF No. 182-1 at 4.)   And while Bilus testified at the evidentiary hearing that he went to trial to preserve the suppression issue, he also appeared to believe, based on counsel's advice, that he had a chance at acquittal.

Fourth, Bilus had no previous experience in the criminal justice system and did not know what could or would happen after a conviction at trial.   Bilus appears to suggest that a seasoned criminal defendant would have known that pleading guilty was a better option than going to trial. The decision whether to go to trial or enter a guilty plea is a complex decision with variables that differ from one defendant to another and even from one case to another.   Bilus' suggestion, made with the wisdom of hindsight, that because of his naivete about the criminal justice system he did not enter a guilty plea, is not persuasive.

Fifth, Bilus states the Government's evidence was strong and a conviction at trial was likely.   As discussed above, there are a number of reasons criminal defendants choose to go to trial, even if the Government's case against them may be strong.   One reason would be reticence to

admit under oath in open court one's guilt of charges such as those in this case.   The "objective" evidence, as Bilus calls it, of the strength of the Government's case is not persuasive with respect to his decision to enter a guilty plea.   And, as Stokes testified at the evidentiary hearing, he believed Bilus had a good chance of acquittal at trial.

The final bit of evidence Bilus offers as "proof" that he would have entered a guilty plea is the length of his sentence.   He claims that the sentence he received was twice the length of the sentence he would have received if he pleaded guilty, taking into consideration that his state sentence is running consecutively to his federal sentence.   Bilus' assumptions that either he would have received a shorter sentence if he had pleaded guilty, or that the district judge in this case would have ordered his sentence to run consecutively to an as yet unimposed state sentence are conclusory, have no evidentiary support and are directly contrary to what the district judge said at lease twice.

### 3.  Ground Three- Failure to Communicate Offer Not to Indict

Lastly, Bilus contends his attorney was constitutionally ineffective because Stokes failed to timely inform him about an offer from the federal

prosecutor not to indict him if he pled guilty to a negotiated state offer. (ECF No. 178-1 at 24.)   He claims that after the Eleventh Circuit's opinion was rendered, during a visit from his attorney "counsel commented on federal prosecutor Frank (sic) Williams calling him prior to the federal indictment asking if the Petitioner was going to accept the state's offer and that such a guilty plea would satisfy all federal interests because the offer included Petitioner pleading guilty to seven counts of pornography, which was the same pornography which ultimately formed the basis for the federal charges."   (ECF No. 178-1 at 25.)   Counsel allegedly insisted he had told Bilus previously about the call, despite Bilus' belief otherwise.

The state's plea offer is contained in an April 30, 2012, letter from State Attorney William P. Cervone, approximately five months before the federal indictment.   (ECF No. 182-2 at 1.)   In the letter Cervone offered a sentence of 56 to 120 months to resolve the two pending state cases against Bilus.   Under the state plea offer Bilus would have been required to plead guilty to multiple counts of child pornography and other related offenses, in exchange for which Cervone would drop all other counts against him.   (*Id.*)   Notably, the letter makes no reference to the possibility

of federal prosecution.    Bilus now contends that had he known of this offer, he would have insisted on pleading guilty to avoid being federally prosecuted, and he claims counsel was constitutionally ineffective either for failing to communicate the offer or, alternatively because he did not "insist[] and implore[]" him to accept the offer.   (ECF No. 178-1 at 25.)

Bilus' testimony at the hearing was consistent with what was presented in his motion.   He said that the morning of the state court suppression hearing, the state had extended an offer of ten years on the charges that would later form the basis for the federal trial.   He said it was only after his federal appeal was final that Stokes told him of a call Stokes received from AUSA Williams asking if Bilus was going to accept the state's plea offer, and expressing if he did so that no federal charges would be filed.

Bilus' understanding of the "offer" from Williams was thoroughly rebutted by Stokes' credible testimony that "we were very clear, we never had a plea offer from Mr. Williams at any time,." Indeed, Stokes denied that the Government had ever agreed not to indict his client if Bilus pleaded guilty in state court.

Case Nos.: 1:12cr42/AW/GRJ; 1:17cv57/AW/GRJ

While there is no evidence supporting this claim (other than Bilus'

statement) even assuming arguendo that there was an offer not to indict

him in federal court, made during the pendency of the state case and

before Bilus was charged in federal court, there is no Sixth Amendment

violation because Bilus' right to counsel had not attached.   *Philmore v.*

*McNeil*, 575 F. 3d 1251, 1257 (11th Cir. 2009).   The right to counsel does

not attach until a prosecution has commenced.   *Id.* (citing *McNeil v.*

*Wisconsin*, 501 U.S. 171, 175 (1991); *Rothgery v. Gillespie County, Tex.*,

554 U.S. 191, 213 (2008)).   Bilus' argument in his reply that trial counsel,

who represented him in both the state and federal proceedings, "should

have had the Petitioner's best interest at heart" (ECF. No. 185 at 12) does

not establish a constitutional violation in these proceedings.   No relief is

warranted.

## V. <u>CONCLUSION</u>

Bilus' motion is based principally upon his assertion that there was a

plea offer from the federal government, offering him a guaranteed sentence

of fourteen years, which would run concurrently with his sentence in a state

case in which he had not yet been tried or convicted.   Because the record

refutes that such an offer was ever made, counsel's performance cannot be found constitutionally ineffective as to the offer.    Furthermore, Bilus' contention that he would have accepted the alleged offer of a fourteen-year sentence fails because that is the same penalty he ultimately received. And as to the issue of concurrency the district judge stated twice that he was not going to impose a concurrent sentence to a state sentence that had not yet occurred and involved in the district judge's view a different crime.

Bilus' reliance on counsel's advice that there were potentially winnable issues for trial, as well as the strength of the suppression issue on appeal was reasonable, even if it ultimately did not bear the fruit he hoped. Bilus' dissatisfaction in the total penalty he received for his conduct, consecutive fourteen-year sentences in both state and federal court, does not render counsel's performance constitutionally deficient.

After a thorough review of the record, and taking into account the evidence offered a the evidentiary hearing, the court concludes that no aspect of counsel's performance was "so patently unreasonable that no competent attorney would have chosen it."    *Dingle*, 480 F.3d at 1099

For the foregoing reasons, the court concludes that Bilus has not shown that any of the claims raised in his motion to vacate, set aside, or correct sentence pursuant to 28 U.S.C. § 2255 have merit.   Therefore, his motion should be denied in its entirety.

## CERTIFICATE OF APPEALABILITY

Rule 11(a) of the Rules Governing Section 2255 Proceedings provides that "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant," and if a certificate is issued "the court must state the specific issue or issues that satisfy the showing required by 28 U.S.C. § 2253(c)(2)."   A timely notice of appeal must still be filed, even if the court issues a certificate of appealability.   Rule 11(b), § 2255 Rules.

After review of the record, the court finds no substantial showing of the denial of a constitutional right.   § 2253(c)(2); *Slack v. McDaniel*, 529 U.S. 473, 483–84 (2000) (explaining how to satisfy this showing) (citation omitted).   Therefore, it is also recommended that the court deny a certificate of appealability in its final order.

Case Nos.: 1:12cr42/AW/GRJ; 1:17cv57/AW/GRJ

The second sentence of Rule 11(a) provides: "Before entering the final order, the court may direct the parties to submit arguments on whether a certificate should issue."   If there is an objection to this recommendation by either party, that party may bring this argument to the attention of the district judge in the objections permitted to this report and recommendation.

Based on the foregoing, it is respectfully **RECOMMENDED** that:

1.      The "Motion under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody" (ECF No. 177) should be **DENIED**.

2.      A certificate of appealability should be **DENIED**.

**IN CHAMBERS** this 23rd day of January, 2020.


*s/Gary R. Jones*

GARY R. JONES
United States Magistrate Judge


## NOTICE TO THE PARTIES

**Objections to these proposed findings and recommendations must be filed within fourteen (14) days after being served a copy thereof.   Any different deadline that may appear on the electronic docket is for the court's internal use only, and does not control.   A**

Case Nos.: 1:12cr42/AW/GRJ; 1:17cv57/AW/GRJ

**copy of objections shall be served upon all other parties.   If a party fails to object to the magistrate judge's findings or recommendations as to any particular claim or issue contained in a report and recommendation, that party waives the right to challenge on appeal the district court's order based on the unobjected-to factual and legal conclusions.   *See* 11th Cir. Rule 3-1; 28 U.S.C. § 636**.